=

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   DARIUS MOSTOWFI, TENG LEW LIM,          No C 03-5784 VRW
     FUNG CHEE LIM and TENG HOWE LIM,
12                                                ORDER
            Plaintiffs,
13
                   v
14
     I2 TELECOM INTERNATIONAL,INC,
15   PAUL R ARENA, BERNARD R KOSSAR,
     ANTHONY F ZALENSKI, ALEX OPRESCU
16   RON ROSWELL, SR, JON ROBERTS and
     ROBERTS, ABOKHAIR & MARDULA, LLP,
17
            Defendant.
18   _____/

19

20         This case arises from defendants' allegedly unlawful

21   orchestration of a scheme to deprive plaintiffs of control over

22   their company and their intellectual property.  There are two

23   groups of defendants: (1) defendants allegedly affiliated with the

24   company I2 Telecom International, Inc (I2 Telecom itself, Paul

25   Arena, Bernard Kossar, Anthony Zalenski, Alex Oprescu and Ron

26   Roswell (collectively, "I2 Telecom defendants")) and (2) I2

27   Telecom's attorneys (Jon Roberts and the law firm Roberts, Abokhair

28

United States District Court
For the Northern District of California

& Mardula LLP (collectively, the "attorney defendants")).

Before the court are I2 Telecom defendants' motion to dismiss the first amended complaint ("FAC") pursuant to FRCP 12(b)(6) and 9(b) (Doc #60) and attorney defendants' motion to dismiss the FAC pursuant to FRCP 12(b)(6) and 9(b) (Doc #65). For the following reasons, the court GRANTS attorney defendants' motion to dismiss and GRANTS IN PART I2 Telecom defendants' motion to dismiss.

I

A

"On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v Turner Broadcasting Systems, Inc, 135 F3d 658, 661 (9th Cir 1998) (citing Parks School of Business, Inc v Symington, 51 F3d 1480, 1484 (9th Cir 1995)). Accordingly, what follows is drawn from the FAC, taking its allegations as true. The causes of action in this case, while premised on a lengthy and complex set of allegations, are all essentially based on plaintiffs' contention that defendants orchestrated a scheme to trick plaintiffs into relinquishing control over the company Supercaller Community, Inc ("Supercaller"), as well as control over various intellectual property rights. See FAC (Doc #49) at 2 ¶ 1. Plaintiff Darius Mostowfi ("Mostowfi"), a California resident, is an electrical engineer and designer of telecommunication hardware. Id at 7-8 ¶¶ 23, 28. Plaintiff Teng Lew Lim ("Lim") is a Malaysian citizen residing in California and is an entrepreneur. Id. In early 2001,

2

**United States District Court**

For the Northern District of California

Mostowfi and Lim collaborated to mass-produce Mostowfi's "VOIP" technology, which allows voice telecommunication calls to be routed over the Internet.  Id at 8 ¶ 29.  Lim incorporated Supercaller for this purpose and invested his own money into development of the product.  Id at 9 ¶ 30.  Plaintiffs Fung Chee Lim and Teng Howe Lim, Lew Lim's uncle and brother, also invested in Supercaller. Id.  The Lims collectively owned about 90% of Supercaller's outstanding shares, while Mostowfi owned the remaining 10%.  Id. Lim became Supercaller's CEO, while Mostowfi assumed the role of CTO.  Id.

Defendants acted in concert with one another to usurp control over both Supercaller itself and the intellectual property right for Supercaller's VOIP technology.  Id at 2 ¶ 2.  According to the complaint, defendants Arena, Kossar and Zalenski created a sham enterprise for the purposes of accomplishing this fraud.  Id at 3 ¶¶ 4-8.  That enterprise is defendant I2 Telecom, a Delaware corporation that allegedly operated with inadequate capital and falsely purported to provide telecommunications services using VOIP technology.  Id at 2 ¶ 3.

Plaintiffs allege that in June 2002, I2 Telecom entered into a Common Stock Purchase Agreement ("CSPA") to invest in Supercaller's VOIP technology.  Id at 12 ¶ 46.  Pursuant to this agreement, I2 Telecom agreed to pay $1,300,000 to purchase 20% of Supercaller's shares.  Id.  The agreement also provided that I2 Telecom defendants would receive one seat on Supercaller's Board of Directors.  Doc #49, Ex A within Ex I.  Defendant Arena filled that seat, but I2 Telecom never paid the amount agreed upon.  Doc #49 at 13 ¶ 47.  (It is not clear from the complaint how much money, if

United States District Court

For the Northern District of California

any, defendants actually paid.)  Moreover, I2 Telecom further entered into a Development and Licensing Agreement ("DLA") which called for I2 Telecom to invest a substantial sum in promoting and marketing Supercaller's products.  Id at 12-13 ¶ 46.  In entering these agreements, the I2 Telecom defendants misrepresented their ability and intentions to consummate the transaction and relied on defendant Roberts (an attorney) and defendant law firm Roberts, Abokhair & Mardula LLP (RAM LLP) to further their misrepresentations.  Id at 4 ¶ 4.  Defendants' actions induced Supercaller to expend its cash reserves in reliance on the receipt of nonexistent funds from I2 Telecom.  Id at 4 ¶ 10.

Thereafter, the I2 Telecom defendants wrongfully obtained control of Supercaller by forcing the resignation of Lim and Mostowfi.  On September 16, 2002, the I2 Telecom defendants called a Supercaller board meeting, falsely accused Lim of accounting fraud, threatened him with criminal prosecution and deportation and forced him to resign.  Id at 4-5 ¶¶ 11-14.  Then, using unlawful board resolutions, the I2 Telecom defendants forced Lim to merge Supercaller into I2 Telecom in return for no consideration.  Id at 5 ¶ 14.  As a result of this sham merger, the I2 Telecom defendants became the owners of Supercaller.  Id at 5-6 ¶ 16.

Next, the I2 Telecom defendants "systematically removed" Mostowfi from Supercaller by wrongfully threatening to terminate his employment, prompting his resignation.  Id at 5 ¶ 17.  Defendants then collaborated with Roberts and RAM LLP to acquire the rights to Mostowfi's intellectual property by threatening Mostowfi with baseless lawsuits if he did not assign his rights in the VOIP technology to the I2 Telecom defendants without any

**4**

compensation.   Id.   Mostowfi then signed over his rights in a provisional patent application he had filed.   Id.

Plaintiffs filed the original complaint in this action on December 22, 2003, alleging twenty-two different causes of action: (1) declaratory judgment under Cal Corp Code § 709; (2) fraud and deceit (misrepresentation and concealment); (3) fraud and deceit (false promise); (4) racketeering conspiracy; (5) substantive racketeering; (6) trespass to chattels; (7) unjust enrichment/restitution; (8) civil conspiracy; (9) interference with prospective economic advantage; (10) breach of duty of good faith and fair dealing; (11) defamation; (12) breach of fiduciary duty, duty of loyalty and duty against self-dealing by defendant Arena; (13) usurpation of corporate opportunity; (14) breach of fiduciary duty, duty of loyalty and duty against self-dealing by the attorney defendants; (15) tortious interference with attorney-client relationship; (16) breach of contract; (17) conversion; (18) infliction of emotional distress; (19) wrongful discharge; (20) professional negligence — legal malpractice; (21) accounting; and (22) constructive trust.   Doc #1.

Attorney defendants moved to dismiss the claims against them pursuant to FRCP 12(b)(6) and 9(b).   Doc #17.   Plaintiffs named the attorney defendants as defendants in seventeen of the twenty-two causes of action (all claims except those for defamation, breach of duty by Arena, usurpation of corporate opportunity, breach of contract and wrongful discharge).   Doc #1. Attorney defendants argued that plaintiffs' claims were based on allegations of fraud and that those allegations were not pled with the requisite particularity mandated by FRCP 9(b).   Doc #17 at 8-9.

United States District Court

For the Northern District of California

1    By order dated May 27, 2004, the court granted attorney

2    defendants' motion to dismiss.  Doc #37.  Noting that the

3    requirements of FRCP 9(b) apply to all of plaintiffs' claims

4    against the attorney defendants, the court was unable to identify

5    any specific statements made by the attorney defendants that

6    satisfied Rule 9(b)'s heightened pleading standards.  Rather, the

7    court found plaintiffs' allegations to be too general and

8    insufficient to support the claims of fraud against the attorney

9    defendants.  Accordingly, the court dismissed the claims against

10   attorney defendants, but granted plaintiffs leave to amend their

11   complaint to: (1) plead fraud against the attorney defendants with

12   the requisite degree of specificity; or (2) replead any of the

13   claims that do not require fraud as an essential element, if

14   plaintiffs are able to assert a non-fraud basis for any of those

15   claims.  Id.

16   In addition to attorney defendants' motion to dismiss,

17   the I2 Telecom defendants also moved the court to dismiss

18   plaintiffs' complaint pursuant to FRCP 12(b)(6).  Doc #8.  Noting

19   that the I2 Telecom defendants failed to demonstrate what essential

20   elements were missing from the complaint, the court denied their

21   motion.  Doc #37.

22

23                                **B**

24   On July 20, 2004, plaintiffs filed the FAC, adding eleven

25   pages to the original complaint's sixty-eight pages.  Doc #49.

26   Although the FAC contains the same twenty-two causes of action as

27   the original complaint, plaintiffs have added eleven new paragraphs

28   below original paragraph seventy-five in an effort to plead their

                                  **6**

United States District Court

For the Northern District of California

allegations of fraud against attorney defendants with sufficient particularity.  Id at 21-28 ¶¶ 75a-75m.  The gravamen of plaintiffs' claim against attorney defendants appears to be the following:  By making fraudulent statements and omissions, attorney defendants deceived plaintiffs into believing:  (1) that I2 Telecom was a legitimate business and (2) that attorney defendants were not secretly working for the benefit of I2 Telecom defendants.  As a result of those fraudulent statements and omissions, plaintiffs disclosed confidential information to attorney defendants (which attorney defendants then disclosed to I2 Telecom defendants).  Id at 4 ¶ 9.  Plaintiffs allege that but for the misrepresentations, they would never have entered into the CSPA or DLA with I2 Telecom defendants.  The court will examine plaintiffs' allegations in greater detail shortly.

        Now before the court is attorney defendants' second motion to dismiss claims 1-10, 14, 15, 17, 18 and 20-22 of the FAC (all causes of action directed against attorney defendants).  Doc #65.  First, attorney defendants argue that plaintiffs' FAC still fails to satisfy FRCP 9(b)'s particularity requirements.  Id at 11.  Next, attorney defendants contend that beyond the alleged fraud defects, plaintiffs have not adequately pled the elements of a RICO claim.  Id at 14.  Also before the court is I2 Telecom defendants' second motion to dismiss claims 2-5, 8-10, 13, 15, 18 and 19 of the FAC.  Doc #60.


                                II

        As a preliminary matter, the court addresses plaintiffs' contention that defendants cannot file a motion to dismiss on

7

grounds separate from those they filed in a first Rule 12 motion. Doc #96 at 2. At bottom, plaintiff argues that because the grounds for certain objections were available to defendants at the time the previous motions to dismiss were filed, defendants should not now be allowed to raise new objections. For several reasons however, plaintiffs' argument is without merit.

FRCP 12(b)(6) provides that a defense of failure to state a claim upon which relief can be granted may be made by motion before filing a responsive pleading to the complaint. FRCP 12(g) requires a defendant to include all defenses and objections permitted under Rule 12 in the same motion. If defendant fails to do so, the omitted defense or objection shall be waived. FRCP 12(h)(2) provides that a 12(b)(6) defense may be made in any pleading permitted under FRCP 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

"The philosophy underlying [Rule 12(g)] is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics." Aetna Life Ins Co v Alla Medical Services, Inc, 855 F2d 1470, 1475, n2 (9th Cir 1988). "[I]t is a waste of judicial resources to consider motion after motion in which defendants raise the same defense over and over, each time testing a new argument." Sprint Telephony PCS, L P v County of San Diego, 311 F Supp 2d 898, 908 (SD Cal 2004).

Defendants' motions to dismiss do not implicate the policy underlying Rule 12(g). First, plaintiffs have alleged twenty-two causes of action in their seventy-nine page complaint (excluding exhibits). To the extent this case has suffered delay, it is a result of plaintiffs' unnecessarily long and disorganized

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

complaint.  Second, as Rule 12(h)(2) makes clear, a defense of failure to state a claim upon which relief can be granted may be raised at several stages; as such, the court will ultimately have to pass on the current round of motions to dismiss.  This case will be most efficiently and expeditiously resolved if the court entertains defendants' motions to dismiss at this stage of litigation.  To the extent that a motion to dismiss for failure to meet Rule 9(b)'s heightened pleading standard may only be raised while the pleadings are open, defendants still have the better of the argument as the salutary purposes of Rule 9(b) – fair notice and appropriately focused litigation – outweigh the efficiency rationale behind Rule 12(g) in this case.

Plaintiffs argue that this court ruled in its May 27, 2004, order that I2 Telecom defendants waived any objections to the RICO causes of action because they failed to raise them in the first Rule 12 motion "and rather attempted to raise those issues in the reply for the first time."  Doc #96 at 2.  But the court merely held that it would not consider arguments raised for the first time in a reply brief, as doing so would unfairly deprive plaintiffs of their opportunity to respond.  In this case, defendants present their arguments in motions to dismiss, rather than in reply to plaintiffs' opposition memorandum.  Plaintiffs therefore have had an opportunity to respond.

Accordingly, in the interests of efficiency and fairness, the court will address all issues raised in defendants' motions to dismiss.

/

/

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III

The court first addresses attorney defendants' motion.

### A

As the court has already indicated, plaintiffs have amended the original complaint in an effort to satisfy FRCP 9(b)'s heightened pleading requirements.  Plaintiffs have added several pages of material in an effort to state specific fraudulent statements and omissions.  While plaintiffs' allegations of fraud against attorney defendants are many, they boil down to two charges:  But for attorney defendants' failure to disclose a conflict of interest, plaintiffs would not have (1) communicated confidential trade secrets to attorney defendants or (2) entered into the CSPA and DLA with I2 Telecom defendants.  Doc #49 at 26-27 ¶ 75h.  Despite plaintiffs' amendment, attorney defendants argue that the FAC still fails to comply with FRCP 9(b)'s heightened pleading standards.

Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

"Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct * * * so that they can defend against the charge and not just deny that they have done anything wrong."  Vess v Ciba-Geigy Corp USA, 317 F3d 1097, 1106 (9th Cir 2003) (internal quotations and citations omitted).  Allegations of fraud "must be accompanied by 'the who, what, when,

where, and how' of the misconduct charged."  Id (citing <u>Cooper v</u> <u>Pickett</u>, 137 F3d 616, 627 (9th Cir 1997)).  Additionally, the allegations must include more than the neutral facts necessary to identify the transaction – the allegations must also set forth what is false and misleading about the statement and demonstrate why the statement is false.  <u>Vess</u>, 317 F3d at 1106; <u>In re GlenFed, Inc</u> <u>Securities Litigation</u>, 42 F3d 1541, 1548 (9th Cir 1994).  Rule 9(b) thus demands much more than mere "notice pleading," as is required under Rule 8(a).  <u>GlenFed</u>, 42 F3d at 1547.

Rule 9(b)'s heightened pleading standard applies not only to claims in which fraud is an essential element, but also to any claim for which the plaintiff has relied entirely on "a unified course of fraudulent conduct" as its basis.  <u>Vess</u>, 317 F3d at 1103. In that event, the claim can be said to be "grounded in fraud" or to "sound in fraud," and the pleading of the claim as a whole must meet the Rule 9(b) standard.  Id at 1103-04.  As is the case with a Rule 12(b)(6) motion, the court may dismiss a claim for fraud (or one grounded in fraud) if the complaint or claim fails to comply with the pleading standard set forth in Rule 9(b).  Id at 1107.

As mentioned above, plaintiffs' FAC contains the same twenty-two causes of action as the original complaint. Accordingly, Rule 9(b) applies with equal force to all causes of action in the amended complaint, regardless of whether fraud is an essential element or the claim is merely grounded in fraud.  See Doc #37 at 24-25.  Moreover, Rule 9(b) applies to both fraudulent statements <u>and omissions</u>.  See <u>In re Stac Electronics Securities</u> <u>Litigation</u>, 89 F3d 1399, 1404 (9th Cir 1996) (explaining that Rule 9(b) requires an explanation as to why the statement or omission

11

complained of was false or misleading).  Because statements and omissions require a somewhat different analysis, the court will first analyze whether any allegations of false statements in the FAC satisfy Rule 9(b).  Next, the court will determine whether plaintiffs have alleged any omissions in conformance with Rule 9(b).  In this inquiry, the court seeks to identify:  (1) a specific statement or omission made to plaintiffs by any of the attorney defendants that was false or misleading; (2) the time and place of such a statement; and (3) allegations describing why that statement was false.

<div align="center">B</div>

The court has reviewed the FAC in search of any purported statement that could conceivably satisfy Rule 9(b).  First, plaintiffs allege that attorney defendants "falsely stated to [plaintiffs] that RAM-LLP would perform a better job at drafting SuperCaller's and Mostowfi's patent applications."  Id at 22.  This statement fails to meet 9(b)'s standards for several reasons.  First, plaintiffs have not identified when or where the statement was made.  Next, the description is vague and provides little detail about the contents of those statements.  Finally, plaintiffs have failed to explain why the statement was false.  In order to know whether attorney defendants did a better or worse job than plaintiffs' previous counsel, plaintiffs must allege the level of performance their other counsel would have met.  Those allegations have not been made.

Most important, according to plaintiffs, is the fact that attorney defendants' invoices from September 6 through September

<div align="center">12</div>

United States District Court
For the Northern District of California

20, 2002, demonstrate that attorney defendants "secretly communicated [plaintiff's confidential information] to [I2 Telecom defendants]" and "used that confidential and privileged information to the advantage of [I2 Telecom defendants.]"  Id at 23-25.  The court is unable to locate any statement in the invoice or elsewhere showing that attorney defendants communicated any confidential information to I2 Telecom defendants.  Nowhere in the invoice have attorney defendants demarcated acts of secret communication or misappropriation of plaintiffs' confidential information. Allegations of fraud must set forth <u>what is false and misleading about the statement</u> and demonstrate why the statement is false. Plaintiffs have failed to make that showing.  It is simply not sufficient for plaintiffs to reprint a bill and tell defendants (or the court) to find the fraudulent misrepresentations.  In short, plaintiffs have not explained to the court how it is that the invoice evidences a false representation.

Next, plaintiffs allege that attorney defendants' "active endorsement that I2 Telecom was a legitimate telecommunications company" caused plaintiffs to enter into the CSPA and DLA.  Id at 27.  Again, plaintiffs have failed to specify when and where any "active endorsements" were made and why they were false.  Moreover, alleging an "active endorsement" hardly approaches the demanding requirement of a specific statement.  Accordingly, this allegation is insufficient under Rule 9(b).

Next, plaintiffs allege that attorney defendants "counseled I2 Telecom and its officers to threaten Mostowfi and force him with unwarranted threats of bankrupting his family with the sole aim to have Mostowfi assign his inventions to SuperCaller

13

United States District Court

For the Northern District of California

* * *."  Id at 27.  This is a very serious charge.  But once again, the court is unable to determine when and where attorney defendants offered such advice and how it misled anyone.  Moreover, to the extent defendants may have misrepresented the law to Mostowfi (i e, deceiving him into wrongly believing that his family could be bankrupted by virtue of his alleged misconduct), "fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law."  Miller v Yokohama Tire Corp, 358 F3d 616 (9th Cir 2004) (internal citations omitted).  And to the extent defendants may have misrepresented fact in stating their intention to bankrupt Mostowfi's family, plaintiffs have not alleged that defendants did not intend to do so.  Accordingly, this alleged statement is without merit.

Next, plaintiffs allege that attorney defendants "promised to prepare each [of plaintiffs' patent applications] for only $2000.  But this promise was false."  Id at 27.  Plaintiffs also allege that attorney defendants "promised to prepare and file SuperCaller's patent applications faster than SuperCaller's then patent counsel, but this was a false promise because not only did Roberts fail to file patent applications timely, he knowingly allowed a provisional patent application to be expired."  Id at 28.

To begin with, plaintiffs' statement that attorney defendants promised to prepare patent applications for $2,000 each "was false" does not tell the court why the statement was false. The issue is not whether attorney defendants in fact prepared the patent applications faster or slower than Chaganti would have.  The issue is whether attorney defendants' promise to prepare the patent applications faster than Chaganti was false when made.  Moreover,

14

in order to allege promissory fraud, plaintiffs must plead facts generally averring that attorney defendants intended not to be bound by their promise <u>at the time the promise was made</u>. <u>Hsu v OZ Optics Ltd</u>, 211 FRD 615, 620 (ND Cal 2002). Plaintiffs have not alleged that attorney defendants harbored an intent to file Supercaller's patent applications at a slower pace than Supercaller's prior patent counsel at the time of the promise. Plaintiffs have alleged that attorney defendants ultimately did not fulfill their promises regarding patent applications. But that fact is not sufficiently probative on the question of attorney defendants' intent at the time of the promise. Nor does it necessarily foreclose the possibility that attorney defendants meant what they said at the time of the promise. While it is true that intent may be averred generally, plaintiffs have not even done that. Accordingly, these allegations do not satisfy Rule 9(b)'s requirements.

Finally, plaintiffs allege that attorney defendants "promised [plaintiffs] that [attorney defendants] would act in the interests of the inventor Mostowfi." Id at 28. However, plaintiffs have not told the court when and where this promise was made, or why it was false (aside from stating that the attorney defendants' invoice somehow shows it was false). Moreover, the alleged statement is vague, and provides insufficient detail as to the nature of the promise. It does not meet the Rule 9(b) standard.

C

The court now turns to plaintiffs' allegations that

United States District Court

For the Northern District of California

attorney defendants made fraudulent <u>omissions</u>.  In the original complaint, plaintiffs made few allegations regarding the conduct of attorney defendants.  Rather, plaintiffs merely proffered vague allegations that attorney defendants knew or should have known that I2 Telecom defendants were defrauding plaintiffs out of their intellectual property.  Doc #49 at 4 ¶ 9.  Moreover, plaintiffs offered the amorphous claim that RAM-LLP "lent an air of legitimacy" to I2 Telecom defendants' "sham investment operation." Id.

The court understands the greater difficulty in pleading fraud by omission (as compared to fraudulent statements).  Plaintiffs must identify specific omissions on the part of defendants, explain when and where those omissions occurred and why they were misleading.  But unlike a specific statement, a fraudulent omission can occur over a continuous period of time rather than a fixed point.  Consequently, it may not be possible for plaintiffs to allege more than attorney defendants' failure to bring certain material information to plaintiffs' attention throughout their entire course of business dealings.  The court is mindful of that difficulty in its assessment of attorney defendants' alleged omissions.  Nonetheless, plaintiffs fail to plead misleading omissions with the requisite particularity.

The FAC alleges that attorney defendants represented that they were working on behalf of Supercaller when in reality, attorney defendants were working in the interests of I2 Telecom defendants.  Id at 21-28 ¶¶ 75a-75m.  In amending their complaint, plaintiffs have provided specific examples of the content of attorney defendants' alleged fraudulent omissions.  First,

United States District Court

For the Northern District of California

plaintiffs allege that attorney defendant Roberts and I2 Telecom defendant Zalenski were close friends, and that attorney defendants failed to state that fact in a telephone conference call on June 26, 2002.  Id at 21 ¶ 75a.  Next, plaintiffs allege that, during the same conference call, Roberts failed to tell plaintiffs that he was working on behalf of I2 Telecom defendants.  Id.  Therefore, according to plaintiffs, Roberts had a conflict of interest and failed to disclose it to plaintiffs on June 26, 2002.  Had attorney defendants not omitted to state those facts to plaintiffs, plaintiffs would not have disclosed confidential trade secrets to them.  Id at 26 ¶ 75h.  Moreover, the failure to state those facts contributed to plaintiffs' belief that attorney defendants were working in the best interests of Supercaller, rather than I2 Telecom.  Id at 22 ¶ 75c.

Plaintiffs did not agree to transfer patent application work to attorney defendants until July 12, 2002.  Id at 27 ¶ 75j. Nor have plaintiffs alleged that they disclosed any confidential information to attorney defendants prior to the transfer of patent application work.  Therefore, if plaintiffs were already aware of the conflict of interest on or before July 12, 2002 when they decided to transfer the work, then attorney defendants' omissions could not have misled plaintiffs when they decided to transfer the patent application work to attorney defendants.  To the contrary, any statement by attorney defendants that there was a conflict of interest would merely have confirmed what plaintiffs already knew.

Plaintiffs allege that on or about July 12, 2002, in a telephone call, Supercaller's "then patent counsel advised [attorney defendants] that there was a conflict of interest if

17

United States District Court

For the Northern District of California

Roberts represented both I2 Telecom and Supercaller * * *."  Id (emphasis added).  Then, "facing the threat of lack of operating funds, SuperCaller discharged its patent counsel and under pressure from [I2 Telecom defendants], turned over the patent work to Roberts."  Id.  These allegations suggest that plaintiffs were already aware of attorney defendants' alleged conflict of interest before they decided to transfer the patent application work to attorney defendants.  Plaintiffs have not alleged whether they believed there was a conflict of interest at the time they decided to turn over the work to Roberts.  The FAC suggests that the facts are to the contrary and that plaintiffs decided to turn the work over to Roberts in spite of a perceived conflict of interest in response to I2 Telecom defendants' alleged threats to withhold operating funds.  Accordingly, plaintiffs have not alleged sufficient facts to show that the omissions misled them into disclosing confidential information to attorney defendants.  Although the court might appear to be picking at small details, these concerns illustrate the necessity of pleading fraud with particularity, particularly pleading when defendants made alleged statements.

Finally, plaintiffs allege that "but for the implication by silence and active endorsement [by attorney defendants] that I2 Telecom was a legitimate telecommunications company * * * neither SuperCaller, nor Mostowfi nor [] Lim would have entered into a technology licensing and investment agreement[] with * * * [I2 Telecom defendants] under the CSPA and the DLA."  Doc #49 at 26-7 ¶ 75h.  First, this alleged omission is fairly amorphous – just what should the attorney defendants have said to plaintiffs?  Moreover,

United States District Court

For the Northern District of California

all of plaintiffs' allegations concerning attorney defendants' statements and omissions relate to <u>June 26</u>, 2002, or later. And yet plaintiffs signed the CSPA and DLA on <u>June 6</u>, 2002. See Doc #62 Ex A,B. The court is at a loss to understand how plaintiffs could have signed the CSPA and DLA in reliance on statements and omissions yet to be made.

In sum, the court finds that plaintiffs have failed to allege facts with sufficient particularity to sustain the causes of action against attorney defendants. Accordingly, the court GRANTS the attorney defendants' motion to dismiss.

D

Attorney defendants further challenge the FAC on the ground that plaintiffs have not alleged the elements of a RICO claim. Doc #65 at 14. Specifically, attorney defendants argue that plaintiffs have not alleged a "pattern" of conduct, which is an element of a RICO violation. Id. Because the court concludes that the entirety of the complaint must be dismissed as to attorney defendants pursuant to Rule 9(b), it declines to pass on whether the allegations (if they had been properly pled under Rule 9(b)) would be sufficient to establish a RICO "pattern" of conduct.

IV

The court now turns to I2 Telecom defendants' motion to dismiss.

A

The court first addresses I2 Telecom defendants'

19

arguments based on Rule 9(b).

1

First, I2 Telecom defendants argue that plaintiffs'
second, third and eighth claims for fraud and deceit do not meet
FRCP 9(b)'s heightened pleading requirements and should be
dismissed.  Doc #60 at 4.  The same standards of heightened
pleading already set forth govern the present analysis.  Because
all three causes of action incorporate the allegations in the
general fact portion of the complaint, the court begins its
analysis there.

a

With respect to general allegations, plaintiffs first
allege that I2 Telecom defendants made several fraudulent promises.
As already set forth, plaintiffs must allege that I2 Telecom
defendants intended not to be bound by their promise <u>at the time
the promise was made</u>.  Plaintiffs allege that defendants "induced
reliance on the part of Supercaller on their promise of capital
infusion."  Doc #49 at 4 ¶ 10.  Next, I2 Telecom defendant Arena
promised plaintiffs that he "would immediately bring investments of
$5,000,000 of his own money."  Id at 10 ¶ 37.  Arena and Zalenski
"further promised [plaintiffs] that [I2 Telecom] would provide
$20,000,000 in subsequent venture funding from its shareholders.
Id at 11 ¶ 38.  "To induce reliance on the part of [plaintiffs],
[I2 Telecom defendants] promised that they would provide a back-end
server system for terminating telephone calls * * *; that they had
an agreement with Macro Communications * * *.  Arena represented

United States District Court

For the Northern District of California

20

United States District Court
For the Northern District of California

that Macro would provide the technology to terminate Supercaller-originated calls * * *, but Macro never delivered what Arena promised that they would deliver."  Id at 13 ¶ 48.  "In August 5, 2002, I2 Telecom promised to support Supercaller's development of a telecom router, but provided neither money nor technical resources."  Id at 13-14 ¶ 50.  In all but the promise on August 5, plaintiffs have failed to allege when the statement was made.  Moreover, in every allegation, plaintiffs have failed to specify where or how it was made.

Next, plaintiffs allege non-promissory fraud in the general body of the FAC as well.  First, plaintiffs allege that I2 Telecom defendants falsely accused them of accounting fraud on September 16, 2002.  Id at 4 ¶ 12.  But such an accusation has nothing to do with misleading plaintiffs.  Rather, false allegations of accounting fraud would go to misleading whatever authorities I2 Telecom defendants reported the fraud to.  To say that attorney defendants deceived plaintiffs into believing that plaintiffs themselves committed accounting fraud does not admit to rational interpretation.  Moreover, as discussed above, fraud cannot be predicated upon misrepresentations of law.  Miller, 358 F3d at 620.

Next, plaintiffs allege that the "'merger' [between Supercaller and I2 Telecom] was a trick in that it at most amounted to a name change."  Doc #49 at 5 ¶ 15.  Plaintiffs have failed, however, to state what is false or misleading about the merger.  Moreover, this allegation amounts to an argument that I2 Telecom defendants misrepresented the law of mergers to plaintiffs, which cannot state a claim for fraud.  Miller, 358 F3d at 620.

United States District Court

For the Northern District of California

1    Next, plaintiffs allege that "[a]fter numerous telephone
2    discussions, Arena and Zalenski made [plaintiffs] believe that [I2
3    Telecom] was a legitimate entity involved in startup financing of
4    technology ventures."  Doc #49 at 11 ¶ 39.  This allegation fails
5    at step one.  Alleging a group of telephone calls without alleging
6    their specific content does not qualify as a specific statement.
7    Vess holds that the circumstances constituting the alleged fraud
8    must be specific enough to give defendants notice of the particular
9    misconduct.  317 F3d at 1106.  Attorney defendants have, no doubt,
10   made several phone calls to plaintiffs.  Without more detail
11   however, attorney defendants cannot know which call or calls, and
12   what content within those calls, unlawfully caused plaintiffs to
13   believe I2 Telecom was a legitimate entity.  Moreover, there is
14   nothing inherently misleading about the existence of a telephone
15   call.  Plaintiffs must plead something about the specific content
16   of those calls that was misleading.  They have not done so.

17   Next, plaintiffs allege that:

18       [a]s part of its deception, I2 [Telecom]
         sported a web site, which showed that it had
19       offices, technology and engineers who were
         ready to provide VOIP services with the
20       licensed Supercaller[] technology.  At the time
         I2 [Telecom] advertised on its website that it
21       was the exclusive worldwide licensee of
         Supercaller's technology, it had on its payroll
22       no electrical engineer with VOIP experience.
         The entire representation by I2 [Telecom] was a
23       consummate lie. * * * These devices and labels
         were to deceive Supercaller and its employees
24       into believing that I2 [Telecom] was a
         legitimate business.
25
26   Doc #49 at 11-12 ¶ 41.

27   The court is satisfied that plaintiffs have properly
28   alleged why statements on the website were false or misleading.

22

But plaintiffs have not alleged when this website came into existence or when plaintiffs first viewed it.  If the website was not created and posted online until after the material events alleged in the FAC occurred, then it has no relevance to this case. Accordingly, this allegation is also insufficient.

**b**

Having found no allegations within the general body of the complaint satisfying Rule 9(b), the court turns to the second, third and eighth causes or action for allegations of specific fraudulent statements or omissions.

The second cause of action for fraud and deceit alleges several vague statements, without specifying the time, location and reason false.  Accordingly, none of these allegations satisfies Rule 9(b).

Plaintiffs also allege fraudulent omissions.  Id at 41 ¶ 97.  First, plaintiffs allege that I2 Telecom defendants failed to tell plaintiffs that I2 Telecom was "a shell company with inadequate funds and when they offered to provide investment funds to Supercaller in the amount of $1,300,000 in or about June 2002, they did not have the funds available to invest."  Id.  This allegation implies that I2 Telecom defendants previously stated that they did have $1,300,000 in June 2002 available to invest. The FAC alleges that "Arena assured Lew Lim that he had money set aside to meet the investment obligation.  But there was no money set aside."  Id at 15 ¶ 56.  "During negotiations leading to the signing of the [CSPA] dated June 6, 2002, Arena represented to Lew that he and I2 Telecom could write a check to cover the entire

United States District Court

For the Northern District of California

escrow amount of $1,000,000.  But he and I2 Telecom never in fact had the capacity to so pay * * *."  Id at ¶ 57.

Moreover, the CSPA provided that "[I2 Phone] agrees to purchase [shares of Supercaller].  The aggregate purchase price of such shares shall be [$1,300,000]."  Doc #62, Ex A at 1.  The agreement goes on to provide for four "closing" dates upon which I2 Phone was to make installment payments to Supercaller.  Id.  On the first closing (on June 5, 2002, or such other time as the parties mutually agree upon) I2 Phone was to pay $300,000 to Supercaller.  Id at 1-2.  On the second closing date (not to occur prior to July 1, 2002), I2 Phone was to pay another $300,000.  Id at 2.  On the third closing date (not to occur prior to August 1, 2002), I2 Phone was to pay $500,000.  Finally, on the fourth closing date (not to occur prior to October 1, 2002), I2 Phone was to pay the final $200,000.  Id at 2-3.

Plaintiffs' allegations come very close to meeting Rule 9(b)'s heightened pleading requirements.  Nonetheless, each allegation suffers from at least one defect.  The first allegation (Arena's assurance that money was set aside to meet the investment obligation) adequately sets forth what was false or misleading about the alleged statement, who made it and to whom it was made.  But it is unclear when or where the statement was made.  It is true that plaintiffs allege other facts within the same paragraph occurring "on or about June 6th, 2002."  Doc #49 at 15 ¶ 56.  But it is not clear whether the alleged fraudulent statement contained in that paragraph was also allegedly made on June 6.

The next allegation (that Arena represented to Lim that I2 Telecom could write a check to cover the escrow amount of

United States District Court

For the Northern District of California

$1,000,000) adequately sets forth what was false or misleading about the statement (i e, that I2 Telecom defendants never had the money to write the check).  Moreover, plaintiffs allege who made the statement and to whom it was made.  Plaintiffs fail to allege when and where the statement was made.  Instead, plaintiffs merely allege that the statement was made "during negotiations leading to the signing [of the CSPA]."  Id at ¶ 57.  The FAC fails to allege over what course of time those negotiations took place or at what point during those negotiations the fraudulent statement was made.  For example, if the negotiations took place over a two-week period, plaintiffs should specify when during that period the alleged statement was made, and where plaintiff and defendant were at the time.  Arena may have been involved in several discussions and negotiations with plaintiff.  Plaintiff must therefore give Arena notice of when and where the alleged statement was made so that he may properly respond.  Was it a conference call?  Were the parties negotiating face-to-face?  Was anyone else present?  These are the kinds of allegations that will enable I2 Telecom defendants to do more than simply deny that they made the statements.

Furthermore, the CSPA has no bearing on whether the failure of I2 Telecom defendants to disclose that they were inadequately capitalized was a fraudulent statement.  The CSPA does not represent that I2 Telecom defendants had the $1,300,000 at the time they entered into the agreement.  Rather, the CSPA provides that I2 Telecom defendants were to pay the money in installments over a course of several months.  There is nothing inconsistent with that agreement and I2 Telecom defendant's failure to have all $1,300,000 in funds at the time the CSPA was entered into.

25

1          Next, plaintiffs allege that I2 Telecom defendants

2    omitted to tell plaintiffs that "I2 Telecom did not have any

3    expertise in the VOIP technology or in the market for the

4    technology."  Id at 41 ¶ 97.  The FAC alleges that "[i]n numerous

5    conference calls in June-September 2002, Arena, Zalenski and I2

6    Telecom promised to provide technical assistance with a backend

7    server deployment, and development of carrier technology – carrier,

8    protocols and regulatory requirements – for several

9    telecommunication product markets.  But this never happened because

10   I2 Telecom never had any technological ability to perform on any of

11   its promises."  Id at 14 ¶ 50.

12          While this statement moves in the direction of satisfying

13   Rule 9(b)'s pleading requirements by setting forth what was

14   misleading about the statement, the complaint fails to set forth

15   when and where the alleged statement or statements were made.

16   Instead, the allegation in question covers a span of time from June

17   through September, 2002.  Moreover, plaintiffs must satisfy the

18   heightened pleading requirements for each defendant.  In re Worlds

19   of Wonder Securities Litigation, 694 F Supp 1427, 1432 (N D Cal

20   1988).  Plaintiff must distinguish among those he sues and

21   "enlighten each defendant as to his or her part in the alleged

22   fraud."  Id (citing Bruns v Ledbetter, 583 F Supp 1050, 1052 (S D

23   Cal 1984).  Plaintiffs' allegation does not sufficiently attribute

24   specific conduct to individual defendants.  Instead, plaintiffs

25   have lumped "Arena, Zalenski and I2 Telecom" together and alleged

26   that all three promised to provide technical expertise.  For one

27   thing, I2 Telecom, as a legal business entity, clearly is not

28   capable of making statements except through an officer or agent,

United States District Court

For the Northern District of California

whom plaintiffs do not adequately identify.  Plaintiff's allegation is therefore over inclusive and must be refined with greater specificity as to who made what statements.

In sum, plaintiffs fail to allege any fraudulent statements or omissions in conformance with FRCP 9(b)'s heightened pleading standards.  Accordingly, the second cause of action against I2 Telecom defendants is DISMISSED.

Plaintiffs' third and eighth causes of action for fraud, deceit and conspiracy, like the second, allege several vague statements, without specifying when the statement was made, where it was made or why it was false.  Id at 43-46 ¶¶ 103-112, 151-161. Accordingly, the third and eighth causes of action against I2 Telecom defendants are both DISMISSED.

2

Next, I2 Telecom defendants argue that plaintiffs' tenth cause of action for breach of the duty of good faith and fair dealing should be dismissed for failure to satisfy Rule 9(b)'s requirements of particularity.  Doc #60 at 8.  Fraud is not an essential element of this cause of action.  Because it is based on I2 Telecom defendants' alleged scheme to defraud plaintiffs, it is grounded in fraud.  See Doc #37 at 24.  Accordingly, the court reviews the tenth cause of action for specific allegations of fraud.

Plaintiffs allege two instances of fraudulent conduct by I2 Telecom defendants.  First, plaintiffs allege that I2 Telecom defendants "ingratiated themselves in the good offices of [p]laintiffs with false representations that they would act in good

27

United States District Court

For the Northern District of California

faith and according to accepted business norms."  Doc #49 at 65 ¶ 169.  This allegation fails to identify a specific misleading statement, when it was made or why it was misleading.  Next, plaintiffs allege that I2 Telecom defendants "promised not to unfairly act with Supercaller and third party companies when [I2 Telecom defendants] provided services of Supercaller and third party companies to their clients."  Id at ¶ 171.  This allegation suffers from the same defects as the first.  Moreover, plaintiffs have not alleged that defendants had an intention to act unfairly when they made any such promise.  Failure to fulfill a promise is not in itself fraudulent.  Accordingly, the tenth cause of action is DISMISSED.

### 3

Relying in part on Rule 9(b), I2 Telecom defendants argue that plaintiffs' fourth and fifth causes of action for racketeering should be dismissed under Rule 12(b)(6).  To state a claim under RICO, 18 USC § 1962(c), plaintiffs must allege:  (1) the conduct; (2) of an enterprise; (3) through a pattern of (4) racketeering activity.  <u>Forsyth v Humana, Inc</u>, 114 F3d 1467 (9th Cir 1997).

### a

First, I2 Telecom defendants allege that plaintiffs have not adequately alleged the existence of an "enterprise" separate from the pattern of racketeering activity in which defendants allegedly engaged.  Doc #60 at 6.  18 USC § 1961(4) defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or

United States District Court

For the Northern District of California

group of individuals associated in fact although not a legal entity."  At a minimum, to be an enterprise, an entity must exhibit some sort of structure for the making of decisions, whether it be hierarchical or consensual.  <u>Chang v Chen</u>, 80 F3d 1293, 1299 (9th Cir 1996).  The structure should provide some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis.  Id.

Plaintiffs have alleged that I2 Telecom is a Delaware corporation, with defendant Arena serving as CEO, defendant Zalenski serving as president and defendant Kossar serving as chairman of the board.  Doc #49 at 3 ¶ 4, 7 ¶ 24.  These allegations show that I2 Telecom exhibited a hierarchical structure independent from the pattern of racketeering activity in which plaintiffs believe defendants have engaged.  Accordingly, I2 Telecom defendants' contention that plaintiffs fail adequately to allege an enterprise is without merit.

**b**

Next, I2 Telecom defendants argue that plaintiffs have failed to plead the underlying criminal acts of racketeering activity with sufficient particularity under FRCP 9(b).  Doc #60 at 6-7.  When a plaintiff alleges fraudulent acts as the predicate acts in a RICO claim, FRCP 9(b) requires that circumstances constituting fraud be stated with particularity.  <u>Pollack v Katz</u>, 42 F3d 1401 (9th Cir 1994).  In <u>Moore v Kayport Package Exp, Inc</u>, 885 F2d 531, 541 (9th Cir 1989), the plaintiff's third amended complaint alleged that:  "Commencing on or about October, 1982, and through and including March, 1983, within the Central District of

United States District Court

For the Northern District of California

California, and elsewhere, the defendants, and each of them, devised, intended to devise and carried out, a scheme to defraud * * *." Id. The court found this allegation insufficient for several reasons. First, the complaint did not attribute specific conduct to individual defendants. Id. Moreover, the complaint did not sufficiently specify the time, place or content of the alleged fraud. Id.

In Pollack, plaintiff alleged that on a number of different dates defendant made fraudulent representations by mail, facsimile transmission and phone. Id. However, plaintiff did not describe the particular contents of the alleged letters, faxes and phone calls and the role they played in the fraudulent scheme. Id. Accordingly, the Ninth Circuit upheld the district court's dismissal of plaintiff's RICO claim. Id.

Similarly in this case, plaintiffs allege that "from February 2002 to the present, [I2 Telecom defendants] combined, conspired and agreed with other businesses * * * to deceive and trick [p]laintiffs into entering into licensing, marketing and investing agreements with I2 Telecom * * *." Doc #49 at 47 ¶ 116. Like the Moore complaint, the FAC here does not sufficiently attribute specific conduct to individual defendants. Nor does the FAC sufficiently specify the time, place or content of the alleged fraud. Moreover, the court has already found that the fraud allegations in the second and third causes of action are insufficient under 9(b). It remains, therefore, only to review the remainder of plaintiffs' fourth and fifth causes of action to determine whether plaintiffs have alleged any predicate acts of fraud with sufficient particularity.

1      Although plaintiffs have no doubt exhausted the thesaurus
2  entries for the word "fraud," alleging that I2 Telecom defendants
3  "deceive[d]," "trick[ed]," "defrauded," "conceal[ed],"
4  "misrepresent[ed]" and "hoodwink[ed]" plaintiffs, the fourth and
5  fifth causes of action do not identify a single misleading
6  statement which satisfies Rule 9(b).  Rather, these allegations
7  repeat the refrain running throughout the FAC.  For example,
8  plaintiffs allege that I2 Telecom defendants have "employ[ed] a
9  variety of practices desired to deceive and trick plaintiffs * *
10  *."  Id at 52 ¶ 130.  I2 Telecom defendants have "deceived
11  plaintiffs into entering an agreement [by] utilizing a <u>variety of</u>
12  <u>practices</u> and strategies designed to deceive * * *."  Id ¶ 131
13  (emphasis added).  I2 Telecom defendants have "deceptively made
14  <u>numerous telephone calls</u>" and "[a]ctively conceal[ed] their true
15  motive."  Id at 53 ¶ 132(a)(emphasis added).  Moreover, I2 Telecom
16  defendants have "[c]aused, through deception, intimidation,
17  trickery and fraud, plaintiffs to forego other legitimate
18  investment opportunities * * *."  Id at ¶ 132(e).  Because these
19  vague allegations continue for several pages, the court declines to
20  explain why each and every one fails to meet 9(b)'s heightened
21  pleading standards.  Suffice it to say that specificity is lacking
22  throughout.

23      Plaintiffs have failed to allege predicate acts of
24  racketeering activity with the specificity required by FRCP 9(b).
25  Accordingly, the fourth and fifth causes of action under RICO are
26  DISMISSED.
27  /
28  /

**B**

I2 Telecom defendants next argue that plaintiffs' ninth cause of action for interference with prospective economic advantage should be dismissed for failure to state a claim upon which relief can be granted.  Doc #60 at 7.  I2 Telecom defendants have not argued that the ninth cause of action lacks merit for failure to comply with FRCP 9(b).  Consequently, the court reviews this cause of action under the substantially more permissive standard of FRCP 8.  This standard is a liberal one that does not require plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that plaintiff give defendant fair notice of the claim and the grounds for making that claim.  <u>Leatherman v Tarrant County Narcotics Intell & Coord Unit</u>, 507 US 163, 168 (1993) (citing <u>Conley v Gibson</u>, 355 US 41, 47 (1957)).  To this end, plaintiffs' complaint should set forth "either direct or inferential allegations with respect to all the material elements of the claim."  <u>Wittstock v Van Sile, Inc</u>, 330 F3d 899, 902 (6th Cir 2003).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Hughes v Rowe</u>, 449 US 5, 10 (1980) (citing <u>Haines v Kerner</u>, 404 US 519, 520 (1972)); see also <u>Conley</u>, 355 US at 45-46.  All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff.  See <u>In re Silicon Graphics Inc Securities Litigation</u>, 183 F3d 970, 980 n10 (9th Cir 1999).

The elements of a cause of action for interference with

32

prospective economic advantage in California are:  (1) plaintiff had an economic relationship with a third party containing the probability of a future economic benefit to plaintiff; (2) defendant had knowledge of this relationship; (3) defendant committed intentional and wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship occurred; and (5) economic harm to plaintiff was proximately caused by defendant's conduct.  Della Penna v Toyota Motor Sales, USA, Inc, 11 Cal 4th 376, 389 (1995).

I2 Telecom defendants contend that plaintiffs have failed to allege facts establishing that Supercaller had an economic relationship with a third party containing future economic benefit. Doc #60 at 8.  Moreover, I2 Telecom defendants argue that plaintiffs did not allege that defendants had any knowledge of an economic relationship with a third party.

Plaintiffs allege that Supercaller "forewent other opportunities to raise venture funding in reliance of the promise by [I2 Telecom defendants].  For example, Supercaller had attractive offers to purchase shares from the Whistler Group * * * and Don Metzger * * *, which were refused because [plaintiffs] relied on the promises of [I2 Telecom defendants.]"  Doc #49 at 13 ¶ 49.  Consequently, the complaint satisfies the first element of interference with prospective economic advantage.  But plaintiffs do not allege that I2 Telecom defendants had knowledge of those relationships or that plaintiffs ever attempted to make I2 Telecom defendants aware of those relationships.  Nor do plaintiffs make allegations that could give rise to an inference that I2 Telecom was aware of those relationships.  Accordingly, plaintiffs' ninth

33

cause of action is DISMISSED.

C

Next, I2 Telecom defendants contend that plaintiffs' thirteenth cause of action for usurpation of corporate opportunity should be dismissed.  Doc #60 at 9.  The corporate opportunity doctrine prohibits a fiduciary from acquiring:

> in opposition to the corporation, property in which the corporation has a vested interest or tangible expectancy * * * [A] corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage.

Robinson, Leatham & Nelson, Inc v Nelson, 109 F3d 1388 (9th Cir 1997).

Plaintiffs allege that if the court finds defendant Arena was a duly appointed member of the Supercaller Board of Directors, he owed Supercaller a duty not to usurp corporate opportunities for himself.  Doc #49 at 68-69 ¶ 186.  According to plaintiffs, I2 Telecom defendants knew of an opportunity to market a Supercaller to Staples, Inc.  Id at ¶ 187.  But plaintiffs have merely alleged that I2 Telecom defendants "used that information to personally benefit."  Plaintiffs have not alleged how defendants used the information to their benefit.  Id.  The complaint must do more than allege the elements of the cause of action in conclusory fashion.  Accordingly, this cause of action is DISMISSED.

D

I2 Telecom defendants next argue that plaintiffs'

34

United States District Court

For the Northern District of California

fifteenth cause of action for interference with attorney-client relationship should be dismissed.  Doc #60 at 10.  The elements of interference with attorney-client relationship mirror those of interference with contract.  <u>Abrams & Fox, Inc v Briney</u>, 39 Cal App 3d 604, 608 (1974).  Plaintiffs must allege:  (1) a valid contract between plaintiff and a third party, (2) defendants' knowledge of this contract, (3) that defendants' intentional acts were designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship and (5) resulting damage.  <u>Pacific Gas & Electric Co v Bear Stearns & Co</u>, 50 Cal 3d 1118, 1126 (1990).  Plaintiffs' complaint should set forth "either direct or <u>inferential</u> allegations with respect to all material elements of the claim."  <u>Wittstock</u>, 330 F3d at 902 (emphasis added).

     According to I2 Telecom defendants, plaintiffs fail to allege that a valid contract existed between plaintiff and Chaganti or that an actual breach of the contract occurred.  Doc #60 at 10.  However, plaintiffs do allege that "Supercaller hired [] Chaganti."  Doc #49 at 71 ¶ 192.  While plaintiffs do not spell out the fact in excruciating detail, the court finds that plaintiffs set forth allegations sufficient to support an inference that plaintiffs and Chaganti had a valid contract.  Moreover, I2 Telecom defendants ignore that not only actual breach but also disruption of the contract satisfies the fourth element.  Plaintiffs allege that Arena "pressured [] Lim not to pay Naren Chaganti for the services he rendered."  Id at ¶ 193.  Again, the court finds that plaintiffs have set forth allegations sufficient to support the inference that I2 Telecom defendants disrupted the contract between plaintiffs and

United States District Court

For the Northern District of California

Chaganti.  Accordingly, I2 Telecom defendants' motion to dismiss the fifteenth cause of action is DENIED.

E

Next, I2 Telecom defendants contend that plaintiffs' eighteenth cause of action for infliction of emotional distress is barred by the statute of limitations.  Doc #60 at 10.  In 2002 the California Legislature amended section 340(3) of the California Code of Civil Procedure, deleting the one-year limitations period for personal injury actions, and adding section 335.1, which now provides a two-year statute of limitations for such actions.

Neither plaintiffs nor I2 Telecom defendants take notice of the extension of the statute of limitations.  Citing a 1998 case, I2 Telecom defendants allege that "[c]laims for intentional infliction of emotional distress must be brought within one year of the event alleged to have inflicted the distress."  Doc #60 at 10. Plaintiffs clearly fail to notice this detail as well.  While they correctly state that "defendants are * * * wrong in asserting statute of limitations * * * for [plaintiffs'] emotional distress claim," plaintiffs' explanation is wildly off target.  Doc #96 at 18.  According to plaintiffs, the statute of limitations does not bar the cause of action for intentional infliction of emotional distress because "[n]othing in the complaint states that plaintiffs are barred by any limitations period."  Id.  But a determination that a claim is barred by the statute of limitations does not turn on whether plaintiffs have alleged in the complaint that they are barred by the statute of limitations from bringing their own claim. Neither party has provided the court with an accurate analysis of

36

the facts and governing law.  Accordingly, I2 Telecom defendants'
motion to dismiss the eighteenth cause of action is DENIED.

F

Finally, I2 Telecom defendants argue that plaintiffs'
nineteenth cause of action for wrongful discharge in violation of
public policy is precluded by a decision by the California
Department of Industrial Relations.  Doc #60 at 11.  FRCP 12(b)
provides that if, on a 12(b)(6) motion to dismiss:

> matters outside the pleading are presented to
> and not excluded by the court, the motion shall
> be treated as one for summary judgment and
> disposed of as provided in Rule 56, and all
> parties shall be given reasonable opportunity
> to present material made pertinent to such a
> motion by Rule 56.

Plaintiffs have had reasonable opportunity to present
material pertinent to the resolution of this issue in their
opposition to defendants' motion.  Instead, plaintiffs argue merely
that this "issue should be saved for another day."  Doc #96.
Nonetheless, the court treats I2 Telecom defendants' motion as one
for summary judgment.

In reviewing a summary judgment motion, the court must
determine whether genuine issues of material fact exist, resolving
any doubt in favor of the party opposing the motion.  "[S]ummary
judgment will not lie if the dispute about a material fact is
'genuine,' that is, if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party."  <u>Anderson v
Liberty Lobby</u>, 477 US 242, 248 (1986).  "Only disputes over facts
that might affect the outcome of the suit under the governing law
will properly preclude the entry of summary judgment."  Id.  And

37

United States District Court

For the Northern District of California

the burden of establishing the absence of a genuine issue of material fact lies with the moving party.  <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.  FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists.  <u>TW Elec Serv v Pacific Elec Contractors Assn</u>, 809 F2d 626, 630 (9th Cir 1987). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id at 249.

Administrative proceedings may be given the preclusive effect accorded to a court when:  (1) An administrative agency is acting in a judicial capacity and (2) resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.  <u>United States v Utah Construction & Mining Co</u>, 384 US 395, 422 (1966); <u>Plaine v McCabe</u>, 797 F2d 713 (9th Cir 1986).

"There can be no indiscriminate presumption of judicial adequacy of state administrative proceedings."  Id at 719. Consequently, the court must carefully review the state administrative proceeding to ensure that, at a minimum, it meets the state's own criteria necessary for a court of that state to give preclusive effect to the state agency's decisions.  Id.  "[A]

United States District Court

For the Northern District of California

federal court should normally give preclusive effect to a state administrative decision when a state court would itself give that administrative decision preclusive effect * * *."  Id at 719 n13.

Neither party has provided the court with relevant authority on this issue.  First, I2 Telecom defendants' recitation of the governing legal standards announced in Utah Construction & Mining Co and Plaine are but a shadow of the complex analysis the court must perform.  These cases state the relevant question; it is up to I2 Telecom defendants to answer it.  As stated above, the court must determine whether a California court would give the administrative decision preclusive effect.  But I2 Telecom defendants offer no such argument.  Instead, the court is told without so much as a citation to a statute or a case that the administrative agency is acting in a judicial capacity and resolved a dispute before it which the parties had adequate opportunity to litigate.  Doc #60 at 11.  As one example of I2 Telecom defendants' deficient argument, the court notes that neither federal nor California law gives preclusive effect to a state administrative proceeding not subject to judicial review.  Wehrli v County of Orange, 175 F3d 692, 695 (9th Cir 1999).  Yet defendants offer the court no guidance about whether decisions of the Department of Industrial Relations are subject to judicial review.  Moreover, Utah Construction & Mining Co and Plaine dictate several additional considerations, but I2 Telecom defendants have submitted nothing to assist the court in that analysis.

Plaintiffs have fared no better in this argument, treating the court to a four sentence rebuttal instructing the court to save the issue for another day because the administrative

39

United States District Court

For the Northern District of California

proceeding is a matter outside the complaint.  This response is not sufficient; there is no reason why plaintiffs could not submit an adequate response to I2 Telecom defendants' contention.

The burden being on I2 Telecom defendants, the court must DENY their motion to dismiss the nineteenth cause of action.

V

"[A] party may amend the party's pleading * * * by leave of court * * * and leave shall be freely given when justice so requires."  FRCP 15(a).  The Ninth Circuit directs district courts to apply the policy of Rule 15(a) with "extreme liberality." Morongo Band of Mission Indians v Rose, 893 F2d 1074, 1079 (9th Cir 1990) (citing DCD Programs, Ltd v Leighton, 833 F2d 183, 186 (9th Cir 1987)).  This liberality, however, is "subject to the qualification that amendment of the complaint [1] does not cause the opposing party undue prejudice, [2] is not sought in bad faith and [3] does not constitute an exercise in futility." DCD Programs, 833 F2d at 186 (internal citations omitted).

In view of the unfocused character of the first two complaints, the court has serious reservations about granting plaintiffs yet another opportunity to amend the complaint.  But with hope overcoming experience, the court GRANTS plaintiffs' request for leave to amend the FAC.  Plaintiffs are granted leave to amend their FAC to: (1) plead fraud against defendants with the requisite degree of particularity required by FRCP 9(b) and (2) replead any of the claims that do not require fraud as an essential element, if plaintiffs are able to assert a non-fraud basis for those claims.  Plaintiffs are also admonished to heed the court's

40

**United States District Court**

For the Northern District of California

instructions to plead fraudulent statements and omissions with
<u>particularity</u>.  Particularity in this context does <u>not</u> mean rococo
evidentiary detail.  It does mean clear and concise allegations of
facts that constitute elements of the claim in question.
Economical pleading is more likely to satisfy the particularity
requirement than many and verbose allegations.  The relevant legal
standards are set forth in this order.

Plaintiffs' failure to allege succinctly, coherently and
nonredundantly the facts giving rise to their claims has occasioned
the parties' confusing and often unhelpful briefing, considerable
delay in resolving the parties' motions and now this lengthy order.
To avoid this in further proceedings, should plaintiffs elect to
file an amended complaint, plaintiffs are ordered to amend under
the following constraints: (1) All factual allegations must be set
forth in the general body of the complaint; (2) the general body
must be no greater than twenty-five pages long and (3) the causes
of action must provide <u>relevant</u> citations (not restatements) to the
underlying factual allegations set forth in the general body of the
complaint.  No further amendment will be permitted except for good
cause shown.

                                VI

Plaintiffs move to file a surreply (Doc #105), a practice
the court strongly disfavors.  Accordingly, plaintiffs' motion is
DENIED.

/

/

/

                               **41**

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1

## VII

2          In sum, the court:  GRANTS attorney defendants' motion to

3   dismiss (Doc #65), GRANTS IN PART I2 Telecom defendants' motion to

4   dismiss (Doc #60) and DENIES plaintiffs' motion to file a surreply

5   (Doc #105).  The remaining causes of action against I2 Telecom

6   defendants (or some subset thereof) are claims 1, 6, 7, 11, 12, 15-

7   19, 21 and 22 in the FAC.  Plaintiffs may if they so choose file an

8   amended complaint by June 13, 2005, and defendants shall answer or

9   otherwise plead on or before July 7, 2005.  If plaintiffs do not

10  file and amended complaint, the I2 Telecom defendants shall answer

11  the FAC by June 27, 2005.

12

13          IT IS SO ORDERED.

14

15  _____

16          VAUGHN R WALKER
            United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28