**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   DARIUS MOSTOWFI, et al,                No   C-03-5784 VRW

12          Plaintiffs,                          ORDER

13          v

14   I2 TELECOM INTERNATIONAL INC, et
     al,
15
16          Defendants.
     _____/

17

18          Rube Goldberg would be proud of the pleading at bar, a

19   second amended complaint (SAC) that alleges orchestration of an

20   unlawful scheme to deprive plaintiffs of control over their

21   intellectual property and their company, SuperCaller Community, Inc

22   ("SuperCaller").  The SAC contains three federal claims and

23   numerous state law claims.  A reader of the SAC could well

24   appreciate the undersigned confining himself to these federal

25   claims for if these claims fail, the state claims may be able to

26   proceed, but in state court, not here.

27   //

28   //

United States District Court

For the Northern District of California

I

On a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." <u>Fresher v Shell Oil Co</u>, 846 F2d 45, 46 (9th Cir 1988). Accordingly, what follows is drawn from the SAC, taking its allegations as true.

The causes of action in this case, while premised on a lengthy and complex set of allegations, are all essentially based on plaintiffs' contention that defendants orchestrated a scheme to trick plaintiffs into relinquishing control both over their company, SuperCaller, and over various intellectual property rights. SAC (Doc #141) at 3 ¶ 5. Plaintiff Darius Mostowfi, a California resident, is an electrical engineer and designer of telecommunications hardware. Id at 2 ¶ 1. Plaintiff Teng Lew Lim ("Lim") is a Malaysian citizen residing in California and is an entrepreneur. Id. Sometime in 2000, Lim started and invested money in Limcom, Inc, a California corporation. Id at 5 ¶ 16. Plaintiffs Fung Chee Lim and Teng Howe Lim, Lew Lim's uncle and brother, also invested in Limcom. Id at 2 ¶ 1, 5 ¶ 16. The Lims collectively owned about 90% of Limcom's outstanding shares, while Mostowfi owned the remaining 10%. Id at 5-6 ¶¶ 16, 17. Lim became Limcom's CEO and Mostowfi became CTO. Id at 5 ¶ 16.

Mostowfi and Lim collaborated at Limcom to develop and market Mostowfi's Voice-over-Internet Protocol (VOIP) technology, which allows voice telecommunication calls to be routed over the Internet. Id at 7 ¶ 18. Limcom then changed its name to SuperCaller and sought additional capital of about $500,000. Id at 6 ¶ 19.

United States District Court

For the Northern District of California

1    Defendants allegedly acted in concert with one another to

2    usurp control over SuperCaller and SuperCaller's intellectual

3    property rights to VOIP technology.  Id at 3 ¶ 5.  To accomplish

4    this fraud, defendants Bernard R Kossar (also acting on behalf of

5    defendant Millennium Partners), Paul R Arena and Anthony F Zalenski

6    allegedly created a sham enterprise called Excel Capital, whose

7    name they changed to I2 Phone when they identified SuperCaller as a

8    "victim."  Id at 3 ¶ 6.  I2 Phone later became defendant I2

9    Telecom.  Id at 3 ¶ 7.  Plaintiffs allege that I2 Phone operated

10   with inadequate capital and that Kossar, Arena and Zalenski falsely

11   represented to Mostowfi and Lim that I2 Phone provided

12   telecommunication services using VOIP technology.  Id at 3 ¶¶ 6, 7.

13       Plaintiffs allege that on June 6, 2002, I2 Phone entered

14   into a Common Stock Purchase Agreement (CSPA) with SuperCaller to

15   invest in SuperCaller's VOIP technology.  Id at 8 ¶ 28.  The CSPA

16   is attached as Exhibit B to the SAC.  Pursuant to this agreement,

17   I2 Phone agreed to purchase $1,300,000 of SuperCaller's shares in

18   four monthly installments.  Id at 9 ¶ 33.  The agreement also

19   provided that a designee of I2 Phone would receive one seat on

20   SuperCaller's board of directors.  Id at 9 ¶ 34.  Defendant Arena

21   filled that seat, but I2 Phone and its successor, I2 Telecom,

22   allegedly never paid the amount agreed upon.  Id at 9 ¶ 34, 11 ¶

23   42, 12 ¶ 48.

24       Also on June 6, 2002, I2 Phone entered into a Development

25   and Licensing Agreement (DLA) with SuperCaller.  Id at 8 ¶ 28.  The

26   DLA is attached as Exhibit A to the SAC.  "The DLA obligated I2

27   Telecom to make royalty payments of hundreds of thousands of

28   dollars every fiscal quarter, and minimum license royalties of $1.5

3

United States District Court

For the Northern District of California

million for the year 2003, $2 million per year from the following year."  Id at 9 ¶ 31.

In entering these agreements, I2 Telecom allegedly misrepresented its ability and intentions to consummate the transaction.  Id at 12 ¶ 49.  I2 Telecom's actions induced SuperCaller to expend its cash reserves in reliance of receiving nonexistent funds from I2 Telecom.  Id at 13 ¶ 51.

Thereafter, I2 Telecom wrongfully obtained control of SuperCaller by forcing the resignation of Lim and Mostowfi.  In teleconferences held on September 12, 2002, Arena and Zalenski agreed with Jon Roberts and Elliott D Light, attorneys at Roberts, Abokhair & Mardula LLP (RAM), "to invent an 'accounting' dispute with Lew Lim, because Kossar said it was the corporate crime du jour after Enron."  Id at 15 ¶ 59.  After the meeting, Roberts told Shauna Wertheim, another attorney at RAM, to draft documents for merging SuperCaller with I2 Telecom.  Id.  Arena called Jim Leimbach, an accountant at Stresser & Associates, who allegedly agreed to invent an accounting fraud.  Id.

On September 16, 2002, Arena called a SuperCaller board meeting, falsely accused Lim of accounting fraud and threatened him with criminal prosecution, deportation and physical harm.  Id at 18-19 ¶¶ 66-71.  That same day, Arena gave the I2 defendants' relatives and related entities millions of shares of stock.  Id at 19-20 ¶¶ 72, 73.  The next day, Wertheim prepared minutes falsely stating that SuperCaller had decided to merge into I2 Telecom.  Id at 20 ¶ 75.  Arena again threatened Lim, forcing Lim to resign as director and CEO of SuperCaller.  Id.

//

4

United States District Court

For the Northern District of California

Next, I2 defendants systematically removed Mostowfi from SuperCaller by wrongfully threatening to terminate his employment, prompting his resignation.  Id at 22 ¶ 83.  Defendants then collaborated with Roberts to acquire the rights to Mostowfi's intellectual property by threatening Mostowfi with baseless lawsuits if he did not assign his rights in the VOIP technology to I2 defendants without any compensation.  Id at 21 ¶ 79.  Mostowfi then signed over his rights to a provisional patent application.  Id.

## II

Plaintiffs filed the original complaint in this action on December 22, 2003, listing eight named defendants and alleging twenty-two different causes of action.  Doc #1.  Roberts and RAM, who were the only attorney defendants at the time, moved to dismiss the claims against them pursuant to FRCP 12(b)(6) and 9(b).  Doc #17.  Roberts and RAM argued that plaintiffs' claims were based on allegations of fraud that were not pled with the requisite particularity mandated by FRCP 9(b).  Id at 8-9.

By order dated May 27, 2004, the court granted Roberts and RAM's motion to dismiss.  Doc #37.  Noting that the requirements of FRCP 9(b) apply to all of plaintiffs' claims against Roberts and RAM, the court was unable to identify any specific statements made by these attorney defendants that satisfied FRCP 9(b)'s heightened pleading standards and found that plaintiffs' allegations were too general.  Id at 25-27.  Accordingly, the court dismissed the claims against Roberts and RAM, but granted plaintiffs leave to amend their complaint to: (1)

5

United States District Court

For the Northern District of California

plead fraud against Roberts and RAM with the requisite degree of specificity or (2) replead any of the claims that do not require fraud as an essential element, if plaintiffs are able to assert a non-fraud basis for any of those claims.  Id.  The court also admonished plaintiffs "to file such an amended complaint and any future filings on paper with numbered lines, as required by Civ LR 3-4(c)(1)."  Id at 28.

In addition to Roberts and RAM's motion to dismiss, I2 and its affiliated individual defendants moved the court to dismiss plaintiffs' complaint pursuant to FRCP 12(b)(6).  Doc #8.  Because these defendants failed to demonstrate the essential elements that were missing from the complaint, the court denied their motion.  Doc #37 at 19.

On July 20, 2004, plaintiffs filed a first amended complaint (FAC), adding eleven pages to the original complaint's sixty-eight pages.  Doc #49.  Although the FAC contained the same twenty-two causes of action, plaintiffs added fourteen new paragraphs below original paragraph seventy-five in an effort to plead their allegations of fraud against Roberts and RAM with sufficient particularity.  Id at 21-28 ¶¶ 75a-75m.  Roberts and RAM then filed a second motion to dismiss all claims directed at them, alleging that plaintiffs still failed to satisfy FRCP 9(b)'s particularity requirements and also did not adequately plead the elements of a RICO claim.  Doc #65 at 14.  The other defendants also filed a second motion to dismiss.  Doc ##60, 61.

//

//

//

United States District Court

For the Northern District of California

In a 42-page order dated May 23, 2005, the court granted Roberts and RAM's motion to dismiss and granted in part the other defendants motion to dismiss. Doc #139. The court noted that "[p]laintiffs' failure to allege succinctly, coherently and nonredundantly the facts giving rise to their claims has occasioned the parties' confusing and often unhelpful briefing, considerable delay in resolving the parties' motions and now this lengthy order." Id at 41. Despite "serious reservations" about letting plaintiffs file yet another complaint, the court granted plaintiffs leave to amend ⎯ but with certain limitations that will be discussed below. Id at 40.

Although described as "only" 58 pages long, the SAC is even more convoluted than the previous two complaints. Plaintiffs have added 23 defendants and nine claims, for a total of 31 defendants and 31 claims (defendants' names are listed below only if the same cause of action is alleged in different counts): (1) declaratory judgment under Cal Corp Code § 709 against defendants I2 Telecom, Arena, Kossar and Audrey L Braswell; (2) appraisal rights under Cal Corp Code § 1300; (3) declaratory judgment under Cal Corp Code § 709 against individual defendants affiliated with I2 Telecom and their relatives and related entities who received stock; (4) judgment to plaintiff Mostowfi for his patent applications; (5) copyright infringement and conspiracy to infringe copyrights, asserted by plaintiff Mostowfi; (6) obtaining property in violation of 18 USC § 1951 and attempts and conspiracies thereof; (7) conversion and attempt to convert property; (8) breach of contract against defendant I2 Telecom; (9) unjust enrichment/restitution; (10) trespass to chattels; (11) accounting;

United States District Court

For the Northern District of California

(12) constructive trust; (13) interference with prospective economic advantage; (14) breach of duty of good faith and fair dealing; (15) civil conspiracy; (16) defamation; (17) breach of fiduciary duty, duty of loyalty and duty against self-dealing against defendant Arena; (18) usurpation of corporate opportunity; (19) breach of fiduciary duty, duty of loyalty and duty against self-dealing against defendants Roberts and RAM; (20) tortious interference with attorney-client relationship; (21) infliction of emotional distress, asserted by plaintiffs Mostowfi and Lim; (22) wrongful discharge in violation of public policy, asserted by plaintiff Mostowfi; (23) breach of fiduciary duty against Kossar, Braswell, Arena and I2 Telecom; (24) racketeering and racketeering conspiracy; (25) common law fraud and negligent misrepresentation (violation of Cal Civ Code §§ 1709, 1710) against defendants I2 Telecom, Arena, Kossar and Zalenski; (26) common law fraud and negligent misrepresentation (violation of Cal Civ Code §§ 1709, 1710) against I2 Telecom's attorneys (defendants RAM, Roberts, John Abokhair and Wertheim); (27) breach of contract against defendant RAM; (28) common law fraud and negligent misrepresentation (violation of Cal Civ Code §§ 1709, 1710) against I2 Telecom's accountants (defendants Leimbach and Stresser & Associates); (29) breach of fiduciary duty against Leimbach and Stresser & Associates; (30) violation of Cal Bus & Prof Code §§ 17200, 17500 and (31) professional negligence/legal malpractice against attorneys for SuperCaller (Jim Berg and the law firm of Reed Smith, LLP).  Various defendants have either moved to dismiss these claims or moved to join in the motions to dismiss.  Doc ##147, 148, 151, 156, 166.

A federal court's jurisdiction is limited, <u>Northwest Airlines v Transport Workers Union</u>, 451 US 77, 95 (1981), so the court turns first to whether there is federal jurisdiction. Happily, the court concludes that there is not.

Plaintiffs assert only three federal claims: copyright infringement, RICO violations and a private cause of action under the Hobbs Act.  There are also allegations of a conspiracy, but conspiracy forms a basis for federal jurisdiction only if the conspiracy's aim is to violate a federal law.

Claim 4 seeks money for Mostowfi's patent applications, but this does not raise a federal question.  The claim has nothing to do with federal patent law and in effect, merely seeks to rescind Mostowfi's assignment of his patent applications to defendants.  "[B]ecause an action to rescind or cancel an assignment is a state-law based claim, absent diversity jurisdiction it is to a state court that plaintiffs must look in seeking a forfeiture of the license." <u>Jim Arnold Corp v Hydrotech Systems, Inc</u>, 109 F3d 1567, 1577 (Fed Cir 1997) (citation omitted).


III

The court analyzes the three asserted federal claims in turn.

A

17 USC § 501(b) provides, "The legal or beneficial owner of an exclusive right under a copyright is entitled * * * to institute an action for any infringement of that particular right committed while he or she is the owner of it."  Mostowfi implicitly employs this provision in claim 5, asserting that "[I2 Telecom]

United States District Court

For the Northern District of California

9

United States District Court

For the Northern District of California

1  infringed and continues to infringe [Mostowfi's] exclusive right to

2  his software, which is a criminal violation of 17 USC § 101 et

3  seq."   SAC at 30 ¶ 136.

4          But the facts alleged in the SAC do not support a

5  Copyright Act claim.  The allegations of the SAC are a bit confused

6  and confusing but the agreements attached as exhibits make the

7  failure to state a claim clear enough (and plaintiffs' pleading

8  cannot assert a claim based on facts to the contrary, Sprewell v

9  Golden State Warriors, 266 F3d 979, 988 (9th Cir 2001)).  The

10  Common Stock Purchase Agreement, Exhibit B to the SAC, provides

11  that SuperCaller, not Mostowfi, owned the copyrights at issue here.

12  CSPA § 2.10(a) states, "To the Company's knowledge (but without

13  having conducted any special investigation or patent search), the

14  Company owns or has licensed under enforceable licenses all right,

15  title and interest in and to all of the Intellectual Property

16  Rights (as hereinafter defined) reasonably necessary for the

17  operation of the Company's business as presently conducted."  Id,

18  Ex B at 6.  CSPA § 2.10(c)(iii) later defines intellectual property

19  rights as including "copyrights (registered or unregistered) and

20  copyrightable works and registrations and applications for

21  registration thereof."  Id, Ex B at 7.  And the complaint indicates

22  that the software at issue here was indeed necessary for

23  SuperCaller's operation.  Id at 33 ¶ 163 ("Plaintiffs have lost

24  control of SuperCaller and its inventory, software, and they cannot

25  for certain determine the true scope of the immense damage

26  committed to their business by from [sic] defendants I2 Telecom and

27  RAM * * *.").

28  //

**United States District Court**

For the Northern District of California

Plaintiffs argue that the court cannot decide that SuperCaller owns the copyright at this stage because "[i]mplicit in [this] argument * * * is that the CSPA was a valid enforceable contract * * * [which is] not an issue[] for a motion to dismiss." Doc #201 at 3.  But plaintiffs themselves rely on the validity of the CSPA in connection with claim 8, their breach of contract claim against I2 Telecom.  SAC at 32 ¶ 153 ("Defendant I2 Telecom breached the CSPA when it failed to pay the $1,300,000 for the shares it contracted to buy.").  And more fundamentally, although the SAC sometimes refers to the software as "Mostowfi's software," the SAC also refers to the software as belonging to SuperCaller.  E g, id at 3 ¶ 5 ("[Defendants] orchestrated a scheme with other intermediaries to deceive plaintiffs into relinquishing control of their company, SuperCaller Community, Inc, its bank accounts, and intellectual property, to wit, <u>software</u> * * *." (emphasis added)).

As SuperCaller, not Mostowfi, owned the copyrighted software, Mostowfi cannot sue for copyright infringement.  See <u>Silvers v Sony Pictures Entertainment, Inc</u>, 402 F3d 881, 885 (9th Cir 2005) ("[U]nder traditional principles of statutory interpretation, Congress' explicit listing of who may sue for copyright infringement should be understood as an exclusion of others from suing for infringement." (emphasis omitted)).

The SAC also indicates that Mostowfi was an employee for hire whose work was owned by SuperCaller.  17 USC § 201(b) provides, "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them,

owns all of the rights comprised in the copyright."  17 USC § 101 defines a "work made for hire" as including "a work prepared by an employee within the scope of his or her employment."

Here, the complaint avers that Mostowfi was an employee of Limcom and SuperCaller.  E g, SAC at 5 ¶ 16 ("Mostowfi became the Chief Technology Officer [at Limcom.]"); id at 46 ¶ 255 ("SuperCaller/I2 Telecom discharged Mostowfi when he complained that the company's failure to meet its payroll obligations was in violation of the California Labor Code, and because he alerted other employees of their rights, to wit, the right to receive wages timely according to the law." (emphasis added)).  The complaint also indicates that Mostowfi invented the VOIP devices and the accompanying software at issue here while employed at Limcom and/or SuperCaller, and that writing the software was within the scope of his employment as Chief Technical Officer.  Id at 6 ¶ 17 ("Limcom, Inc decided to develop and market telecommunications devices that use [VOIP].  Towards that end, Mostowfi designed a device, which he named Media Gateway (MG-1), which would enable cheap telephone calls over the Internet."); id at 30 ¶ 136 ("[Defendants] reproduced, distributed, stored and sold thousands of SuperCaller devices containing Mostowfi's software code * * *.").  Hence, these facts indicate that the work-for-hire exception squarely applies.

Accordingly, it is plain that SuperCaller, not Mostowfi, owned the software copyright.  Mostowfi's copyright claim fails as a matter of law and claim 5 is DISMISSED.

//

//

//

**12**

United States District Court

For the Northern District of California

**B**

Relying in part on FRCP 9(b), defendants contend that claim 24 for racketeering and racketeering conspiracy should be dismissed under FRCP 12(b)(6).  To state a claim under RICO, 18 USC § 1962(c), plaintiffs must allege:  (1) the conduct; (2) of an enterprise; (3) through a pattern of (4) racketeering activity.  <u>Forsyth v Humana, Inc</u>, 114 F3d 1467, 1481 (9th Cir 1997).

Defendants argue that plaintiffs have failed to plead the underlying criminal acts of racketeering activity with sufficient particularity under FRCP 9(b).  Doc ##147 at 20-21; 148 at 5-6.  "Rule 9(b)'s requirement that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims."  <u>Edwards v Marin Park, Inc</u>, 356 F3d 1058, 1065-66 (9th Cir 2004) (quoting <u>Alan Neuman Productions, Inc v Albright</u>, 862 F2d 1388, 1392 (9th Cir 1989)).  And "Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  <u>Moore v Kayport Package Express, Inc</u>, 885 F2d 531, 541 (9th Cir 1989).

In the order dismissing the racketeering claims in the FAC, the court admonished plaintiffs "to heed the court's instructions to plead fraudulent statements and omission with <u>particularity</u>."  Doc #139 at 40-41.  But as with the FAC, plaintiffs' SAC fails to plead any predicate acts with enough particularity.  In the section entitled "Predicate Acts" under claim 24 (SAC at 48 ¶ 273 — 50 ¶ 284), many of the alleged predicate acts are just bald assertions that defendants violated

United States District Court

For the Northern District of California

federal statutes.  E g, id at 50 ¶ 278 ("They have violated the Hobbs Act (18 USC § 1951) by using threats of deportation, jail, criminal prosecution and financial ruin."); id at 50 ¶ 279 ("They have violated the Travel Act (18 USC § 1952) by traveling across state lines to commit extortion.").  And the other alleged predicate acts are simply general statements about actions that defendants allegedly committed.  E g, id at 48 ¶ 273(a) (alleging a predicate act "for false statement that I2 Telecom was not formed for the purpose of investing in SuperCaller.").

This problem is further exacerbated because plaintiffs simply lump together the defendants in claim 24 and do not attempt to describe the particular acts or omissions that each defendant committed.  Compare Vicom, Inc v Harbridge Merchant Servs, Inc, 20 F3d 771, 778 (7th Cir 1994) ("[I]n a case involving multiple defendants, such as the one before us, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'  We previously have rejected complaints that have 'lumped together' multiple defendants." (first quoting DiVittorio v Equidyne Extractive Industries, Inc, 822 F2d 1242, 1247 (2d Cir 1987)) (citations omitted)).

In addition, none of the predicate acts include any specific dates, except for the act described in SAC at 48 ¶ 273, 49 ¶ 273(k):  "Beginning February 2002, and continuing to the present, I2 Telecom, RAM, Stresser and the individual racketeers have violated numerous predicate statutes: * * * for concealing that Roberts had an actual conflict of interest between I2 Telecom and SuperCaller on or about September 11, 2002."  But this statement, like all the others, fails to attribute specific conduct to each

14

defendant and does not specify the place of the alleged fraud.

Moreover, although plaintiffs were specifically instructed in the court's previous order that "the causes of action must provide <u>relevant</u> citations (not restatements) to the underlying factual allegations set forth in the general body of the complaint," Doc #139 at 41, claim 24 restates and realleges the entire facts section (¶¶ 1-104) rather than specifically pointing to the relevant factual allegations.  It is an exercise in futility to determine which facts, if any, in that tedious section add the particular details sufficient to describe the alleged fraudulent acts.  For example, plaintiffs allege a predicate act of "concealing from SuperCaller shareholders that Kossar and Arena had given themselves and families [sic] watered down shares of I2 Telecom to the detriment of SuperCaller shares * * *."  SAC at 49 ¶ 273(p).  But after combing through the complaint, the court is unable to discern which defendants partook in this concealment and when, where and how this alleged concealment occurred.  And in any event, this court does not have to hunt down the supporting facts, if any exist, that are buried in the unnecessarily voluminous SAC. Cf <u>United States v Dunkel</u>, 927 F2d 955, 956 (7th Cir 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Accordingly, the court finds that plaintiffs have failed to allege predicate acts of racketeering activity with the specificity required by FRCP 9(b).  Accordingly, claim 24 is DISMISSED.

//

//

//

C

Although not specifically stated as a ground for jurisdiction by plaintiffs in the SAC, the court examines whether claim 6, which is brought under 18 USC § 1951, provides a basis for federal question jurisdiction.  18 USC § 1951, which is popularly known as the Hobbs Act, is a criminal statute that states in relevant part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

In their opposition, plaintiffs allege that the court should imply a private right of action under this provision via Cort v Ash, 422 US 66, 78 (1975).  Doc #201 at 4-5; see also Opera Plaza Residential Parcel Homeowners Association v Hoang, 376 F3d 831, 834-35 (9th Cir 2004).

But "[the Supreme] Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'"  Chrysler Corp v Brown, 441 US 281, 316 (1979) (quoting Cort, 422 US at 79).  Plaintiffs have not cited, and this court has not found, any cases in which the Hobbs Act formed the basis for an implied private right of action.  Although the Ninth Circuit apparently has not addressed this issue in a published opinion, other courts have uniformly declined to infer a private right of action under the Hobbs Act.  E g, Wisdom v First Midwest Bank, 167 F3d 402, 408-09

United States District Court

For the Northern District of California

(8th Cir 1999) ("We agree that neither the statutory language of 18 USC § 1951 nor its legislative history reflect an intent by Congress to create a private right of action."); Neal v Carron, 2006 WL 522361, 9 (WD Ky, Feb 28, 2006) ("[T]he Hobbs Act is a criminal statute, which does not provide for a private cause of action."); Campbell v Austin Air Systems, Ltd, 2005 WL 2405997, 8 (WDNY, Sept 29, 2005) ("[F]ederal courts have consistently found that the Hobbs Act does not support a private cause of action."); Bajorat v Columbia-Breckenridge Development Corp, 944 F Supp 1371, 1377-78 (ND Ill 1996); John's Insulation, Inc v Siska Const Co, Inc, 774 F Supp 156, 163 (SDNY 1991) ("There is no implied private cause of action under the Hobbs Act."); Peterson v Philadelphia Stock Exchange, 717 F Supp 332, 336 (ED Pa 1989) ("The Hobbs Act contains no language which suggests it can provide civil relief. Moreover, this court cannot find congressional concern for civil relief in the legislative history."); Creech v Federal Land Bank of Wichita, 647 F Supp 1097, 1099 (D Colo 1986). Accordingly, the court concludes that 18 USC § 1951 does not implicitly create a private right of action and does not form a basis for federal question jurisdiction. Plaintiffs' claim 6 is therefore DISMISSED.

//
//
//
//
//
//
//
//

17

**IV**

**A**

In their opposition, plaintiffs move for leave to amend "[i]n case the court finds the required level of detail is not there with respect to any cause of action."  Doc #201 at 23. Plaintiffs also state that they "hope and believe that they have not frittered away the generous grant of leave to amend."  Id at 23.

FRCP 15(a) provides that a party no longer permitted to amend its pleadings "as a matter of course * * * may amend the party's pleading only by leave of court or by written consent of the adverse party."  "In the absence of any apparent or declared reason —— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc —— the leave sought should, as the rules require, be 'freely given.'"  <u>Foman v Davis</u>, 371 US 178, 182 (1962) (quoting FRCP 15(a)).  The decision to grant or deny leave to amend rests with the discretion of the court.  See <u>Swanson v United States Forest Service</u>, 87 F3d 339, 343 (9th Cir 1996).

The court declines to grant leave to amend here.  First, in the court's May 23, 2005, order dismissing claims in the FAC, the court warned plaintiffs that "No further amendment will be permitted except for good cause shown."  Doc #139 at 41.  Apart from reciting the general rules governing amendments, plaintiffs have not provided any reason why leave to amend should be granted in this particular case.  Doc #201 at 23-24.

Moreover, because plaintiffs have failed to file a proper complaint even after being given three chances to do so, permitting additional amendment would likely be futile. The court notes that in each of the complaints filed, at least some of plaintiffs' claims were dismissed because they failed to plead fraud with particularity. Plaintiffs' "repeated failure to cure deficiencies by amendments previously allowed" makes it improper to grant leave to amend here.

Additionally, permitting amendment here would create undue delay and cause undue prejudice to defendants. Although plaintiffs' original complaint was filed in 2003, this case has yet to proceed past the pleadings stage. Plaintiffs' case, whether meritorious or not, hangs as a cloud of uncertainty over defendants; permitting further amendment would only delay matters further and enable this cloud to linger.

**B**

But there is another reason not to allow plaintiffs to amend; indeed, another reason to dismiss the SAC altogether. Dismissal with prejudice would be appropriate pursuant to FRCP 41(b) for failure to comply with the court's May 23, 2005, order and the local rules. Defendants have moved to dismiss under this provision (Doc #147 at 2), which provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision * * * operates as an adjudication upon the merits.

//

//

19

United States District Court

For the Northern District of California

In its May 23, 2005, order, the court stated:

> In view of the unfocused character of the first two complaints, the court has serious reservations about granting plaintiffs yet another opportunity to amend the complaint.  But with hope overcoming experience, the court GRANTS plaintiffs' request for leave to amend the FAC. * * *
>
> [S]hould plaintiffs elect to file an amended complaint, plaintiffs are ordered to amend under the following constraints: (1) All factual allegations must be set forth in the general body of the complaint; (2) the general body must be no greater than twenty-five pages long and (3) the causes of action must provide relevant citations (not restatements) to the underlying factual allegations set forth in the general body of the complaint.

Doc #139 at 40-41.  Sadly, experience has finally vanquished hope, as plaintiffs' counsel clearly did not take this order to heart.

As a preliminary matter, the latest complaint is once again rife with unnecessary evidentiary detail.  Plaintiffs describe their position:

> [Defendants] first say that Plaintiffs ignored FRCP 8 when they gave too many pages of details.  Then they argue that the complaint sounded or grounded in fraud, and did not meet the particularity requirements of Rule 9(b).  They hope to have the case dismissed somehow, and ask the court to pick a rule.

Doc #201 at 17.  But as the court explained in its previous order:

> Plaintiffs are also admonished to heed the court's instructions to plead fraudulent statements and omissions with particularity.  Particularity in this context does not mean rococo evidentiary detail.  It does mean clear and concise allegations of facts that constitute elements of the claim in question.  Economical pleading is more likely to satisfy the particularity requirement than many and verbose allegations.

Doc #139 at 40-41.  To summarize, it is not inconsistent to have a complaint that is both "short and plain" and one that pleads the elements of fraud with particularity.  See In re Westinghouse

United States District Court

For the Northern District of California

Securities Litigation, 90 F3d 696, 703 (3d Cir 1996) ("[T]he particularity demands of pleading fraud under Rule 9(b) in no way negate the commands of Rule 8." (Alito, J) (quoting Vicom, 20 F3d at 776) (internal quotation marks omitted)).  The latest complaint, like the previous two, fails to meet either of these requirements.  Plaintiffs' counsel put it best when, in his opposition, he appears to describe his own complaint:  "[I]t is a train wreck."  Doc #201 at 25.

Additionally, plaintiffs' SAC violates each of the three specific directives set forth in the May 23, 2005, order.  First, as noted previously, many of plaintiffs' claims do not "provide relevant citations * * * to the underlying factual allegations set forth in the general body of the complaint."

Next, violating the directive that "[a]ll factual allegations must be set forth in the general body of the complaint," plaintiffs included factual allegations throughout the SAC.  See, e g, SAC at 36 ¶ 185 (states in claim 16, "On December 11, 2002, Doug Bender, the 'general manager' of I2 Telecom, told John Cooney, an employee of Supercaller, that Lew Lim and Darius were the 'biggest crooks [he] had ever met' in his 'twenty years in the Silicon Valley.'" (alteration in original)); id at 57 ¶ 356 (states in claim 31, "Berg failed to challenge the 0.0023 ratio which I2 Telecom used to decimate SuperCaller shares.").  These allegations, if added to the general body, would greatly expand its length.

//

//

//

United States District Court

For the Northern District of California

Which brings the court to the final contravened directive:  "[T]he general body of the complaint must be no greater than twenty-five pages long."  In addition to including factual allegations outside of the 25-page general body, plaintiffs also, in essence, exceeded the 25-page limit by increasing the number of lines per page.  In support of this maneuver, plaintiffs' counsel explained, "Plaintiffs have always used a 1.5 line-spacing which results in 31 lines per 8.5" x 11" page."  Doc #201 at 25 (emphasis in original).  At oral argument, plaintiffs' counsel also indicated that he used the 31-line paper "to save some trees."  The court is, to say the least, puzzled by these arguments.  Plaintiffs' counsel is admitting that he consistently violates Civ L R 3-4(c)(2), because his filings are neither double-spaced nor 28 lines or less per page, as required by that rule.  (Indeed, the opposition in which plaintiffs' counsel stated its position also violates this rule.  See Doc #201.)  This persistent intransigence is particularly noteworthy given that the court already admonished plaintiffs not to violate a different provision of Civ L R 3-4(c) in the court's May 27, 2004, order dismissing the original complaint.  Doc #37 at 28 ("Plaintiffs are also ORDERED to file such an amended complaint and any future filings on paper with numbered lines, as required by Civ LR 3-4(c)(1).").  Moreover, because the FAC (Doc #49) has 29 lines per page but the SAC (Doc #141) has 31 lines per page (e g, compare FAC at 4 with SAC at 4), this alteration suggests that plaintiffs' counsel deliberately increased the lines per page so that plaintiffs' factual allegations would fit within the 25-page limit.

//

For these reasons, plaintiffs' motion for leave to amend (Doc #201) is DENIED.  And in light of plaintiffs' failure to comply both with this court's May 23, 2005, order and the local rules, the court concludes that DISMISSAL WITH PREJUDICE pursuant to FRCP 41(b) is warranted.  The court will limit that dismissal to the federal claims as they are the only claims that the court has analyzed and is satisfied are baseless under federal law.

Additionally, because none of plaintiffs' federal claims survive, the court declines to exercise supplemental jurisdiction over the remaining state law claims.  See 28 USC § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction * * *.").  Accordingly, those claims are DISMISSED.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

23

V

In sum, the court GRANTS defendants' motions to dismiss and motions for joinder (Doc ##147, 148, 151, 156, 166) and DENIES plaintiffs' motion for leave to amend (Doc #201).  The court also DENIES AS MOOT the various motions for default judgment and motions to set aside default (Doc ##174, 181, 193).  Plaintiffs' federal claims are DISMISSED WITH PREJUDICE; plaintiffs' state law claims are DISMISSED.  The clerk is DIRECTED to close the file and TERMINATE all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge